## ALVAN CUTLER *vs.* WILLIAM POPE.

Grass already grown, and in a condition to be cut, may be sold by parol ; and there is no objection to such sale, arising from the statute of frauds.

Where grass is sold on credit, and a license is given to cut it, but no lien reserved ; the property in the grass passes to the vendee, and the vendor cannot hold it for the payment of the purchase money.

TRESPASS, for taking a quantity of hay on township No. 18.

The plaintiff proved that he cut seven and a half tons of hay on said township, and that it was taken by defendant. The defendant by his brief statement justified the taking, as the agent of *John Lemist,* who it was agreed was the owner of *Scott's* meadow, on which the hay was cut, at the time of the cutting.

*J. C. Talbot,* testified, that he was the agent of said *Lemist* at that time, and gave one *Levi Scott* a written permit, which was lost, to cut the grass on said meadow, he paying the usual price, but there was no provision in said permit that he should hold the hay till the license was paid for. His agency terminated in *November* after the cutting, and *Pope* was appointed *Lemist's* agent. The defendant's counsel contended, that *Scott* would have no right under said permit to remove said hay from the meadow, before paying for the license. But *Weston C. J.* presiding at the trial, ruled otherwise.

It did not appear whether the hay was cut by plaintiff before or after the date of *Scott's* permit; but *Mr. Talbot* thought he gave it the day before the plaintiff went on to the meadow.

*John Bagley*, testified, that when *Scott* went on to the meadow, he found part of it had been cut and in stack, upon the date of the license. *Scott* commenced cutting, when plaintiff came and forbid him. It was finally agreed between *Scott* and plaintiff, that plaintiff might have what he had cut and the remainder of the grass on condition, that he should account to *Lemist*, or to *Miles*, under whom he claimed, whoever should prove to be the owner of *Scott's* meadow ; that *Scott* requested plaintiff to put up what hay they had, and plaintiff said he would, and witness thought he did, but such request and promise was no part of the bargain for the grass. At the time the defendant took the hay he was the agent of *Lemist*, and claimed a right to do so under him. The plaintiff had not paid *Lemist*, or either of his agents for the grass.

The counsel for defendant contended, that under said license, *Scott* had no right to sell the grass to plaintiff; but the Chief Justice ruled otherwise, and that this was a sale of the grass to the plaintiff. The counsel for the defendant further contended, that the plaintiff had no right to remove the hay, until he had paid to *Lemist* or his agent, the value of the grass. But the Chief Justice ruled otherwise. Upon this evidence and ruling the defendant was defaulted, it being agreed, that if in the opinion of the Court, the action is not maintained, the default is to be taken off and the plaintiff to become nonsuit ; otherwise the default is to stand and judgment is to be rendered thereon.

*F. Allen*, for the defendant.

The property in the hay remained with the owner until it was paid for, no credit being given. *Hussey* v. *Thornton*, 4 *Mass. R.* 405 ; *Marston* v. *Baldwin*, 17 *Mass. R.* 606.

*Scott* had no right to transfer his permit to the plaintiff, it being a personal trust. *Pease* v. *Gibson*, 6 *Greenl.* 81.

But if *Scott* had authority to transfer his permit, it was not done, as it was merely by parol. The grass was standing, and any contract not in writing was void by the statute of frauds. *Crosby* v. *Wadsworth*, 6 *East*, 602.

Cutler *v.* Pope.

*Hobbs,* for the plaintiff,

The case finds, that the grass was cut, and the license fully executed, long before the defendant was appointed agent. When a license is once executed, it cannot be revoked. *Fitzh. Trespass,* 149; 3 *Bur.* 1826 ; *Co. Lit.* 4 *b.*

*Lemist* himself could not have revoked the license, when the trespass was committed, but the defendant had nothing to do with it, and he did not even attempt to revoke it. The grass was sold to *Scott,* and he was answerable for the price. It can make no difference whether it was paid for, or not. The case in 6 *East,* cited for the defendant, is an authority, that *Scott* only could be called on. The grass might be sold, or the permit assigned, by *Scott,* like any other property. The grass could be sold by parol, and the statute of frauds does not apply to this case. It has been holden, that it does not apply even in the case of a sale of betterments on land. *Lombard* v. *Ruggles,* 9 *Greenl.* 62. There was no right reserved to hold the grass until payment was made ; but had the right to take the grass instead of money existed, no election to do it was made.

The action was continued *nisi,* and the opinion of the Court delivered, afterwards, as drawn up by

WESTON C. J. — As part of the grass was standing, when it was sold by *Scott* to the plaintiff, and that sale was by parol, an objection is interposed, that this was an interest in land, and not a mere personal chattel, and could not therefore consistently with the statute of frauds, be sold without an instrument in writing.

The counsel for the defendant relies upon the case of *Crosby* v. *Wadsworth,* 6 *East,* 602, which was upon a sale of grass then growing, which was adjudged to be within the statute of frauds. This did not accord with an anonymous case, reported in 1 *Lord Raymond,* 182, in which *Treby C. J.* and *Powell J.* were of opinion that growing timber might be sold by parol. And in *Whipple* v. *Foot,* 2 *Johns.* 418, it was decided that wheat or corn growing is a chattel, and may be taken in execution and sold. The case of *Crosby* v. *Wadsworth* was questioned in *Frear* v. *Hardenburgh,* 5 *Johns. R.* 272.

But in *Parker* v. *Staniland,* 11 *East,* 362, the true ground, upon which that case turned, is stated and commented upon, namely, that it was for the sale of a crop of growing grass, for the continued growth and maturity of which, a certain interest in the land was necessary ; a case however, which *Lord Ellenborough* said he should be unwilling to extend. That which was then under consideration, was the sale of a crop of potatoes, then ripe and to be immediately dug and taken from the ground; and it was held to pass no interest in the land ; and that the sale might therefore be made by parol.

And we are of opinion, that grass already grown and in a condition to be cut, as the grass in question was, might be sold by parol, and that there is no objection to such sale, arising from the statute of frauds.

It appears from the testimony of *Mr. Talbot,* the agent of the owner of the land, that he sold the grass to *Scott,* and that without any lien on the hay for the price. Prompt payment was not a condition of the sale ; and it is evident from the testimony, that it was neither exacted nor expected. *Scott* then being a purchaser of the grass, from the agent of the owner, although remaining his debtor therefor, had a right to sell it to the plaintiff. It appears, that the consideration for which *Scott* sold was, that the plaintiff should do certain labor for him, equal to what he had done upon the grass sold, and that he should pay to *Lemist* the price for which he purchased. Thereupon the plaintiff proceeded to make the hay, and subsequently removed it. So far as it regarded the sale of the hay, this was a contract executed. The price was the plaintiff's promise to labor for *Scott* and to pay *Lemist.* *Scott* reserved no lien, and the property in the hay was transferred to the plaintiff. This took place before the agency of the defendant commenced. The hay was the plaintiff's property ; and the defendant has shown no justification for taking it away.

*Judgment for the plaintiff.*