## CLARK S. EDWARDS *versus* THE GRAND TRUNK RAILWAY CO.

Executory contracts of sale are within the statute of frauds.

Agreements, to furnish articles to be manufactured in a particular manner by the party contracting, are not within the statute.

But the fact that the article contracted for does not exist at the time of the contract, but is to be manufactured, will not, necessarily, take the case out of the statute. It must also appear that the particular person, who is to manufacture it, or the mode, or materials, enter into and make part of the contract.

When the party contracting is bound to receive an article bought or procured by the other party after the contract, it is within the statute.

A contract by a railroad company "to take all the wood a person would put on the line of their road during the season, at the same price they had paid him before for wood, or more, if the wood was better," is within the statute.

In order to take the case out of the statute, there must be, not only a *delivery* but also an *acceptance* of the wood furnished, so that the buyer can take no exception to the quantity or quality.

Where, by the contract, the wood is to be "measured and inspected the next spring," there is no such acceptance as will take the contract out of the statute, if there had been no such measuring and inspecting.

ON EXCEPTIONS to instructions of GOODENOW, J.

ASSUMPSIT for 250 cords of wood. The writ contains three counts; one for not accepting the wood; another for wood sold and delivered, and the third for services performed and materials furnished.

The plaintiff's testimony is stated in the dissenting opinion of GOODENOW, J.

The counsel for defendants requested the Judge to instruct the jury, that the case was within the statute of frauds and could not be maintained.

But the Judge declined so to instruct the jury, but did instruct them, (among other things,) that, if the facts were as stated by the plaintiff, the case did not come within the statute of frauds.

The verdict being for plaintiff, the defendants excepted.

*Barnes,* for defendants.

*Walton*, for plaintiff.

The opinion of the Court was drawn up by

KENT, J.—The presiding Judge instructed the jury, that " if the facts were as stated by plaintiff, the case was not within the statute of frauds." The facts, as stated by plaintiff, are, that the agent of the defendants said to him that they, (the defendants,) would take all the wood he would put on the line of the road that season at the same price they had paid him before for wood, or more, if the wood was better."

The first count in the writ is for not accepting the wood put on the line of the railroad.

Was the ruling of the Court on this point correct ? This depends upon the decision of the question—was this " a contract for the sale of goods, wares or merchandize," within the meaning of the statute of frauds ? R. S., c. 111, § 5.

It was a contract to be executed in the future ; but it has been often decided that executory contracts of sale are within the statute. *Hight* v. *Ripley*, 19 Maine, 137.

A distinction has been made between contracts for the *sale* of goods, and agreements to furnish articles to be *manufactured* in a particular manner by the party contracting. The latter class are held not to be within the statute. *Abbot* v. *Gilchrist*, 38 Maine, 260.

The fact, that the article contracted for does not exist at the time of the contract, but is to be made or manufactured, will not, necessarily, take the case out of the statute. It must also appear that the particular person, who is to manufacture it, or the mode and manner, or materials, enter into and make part of the contract. *Hight* v. *Ripley*, 19 Maine, 137; *Fickett* v. *Swift*, 41 Maine, 68.

If a man agrees to purchase one hundred boxes of candles at a fixed price, although both parties understand that the candles are not then manufactured, but are to be thereafter, yet this is essentially a contract of sale. The fact that they are to be afterwards manufactured makes no part of the con-

tract. But if the bargain had been that the party should manufacture the candles from a particular lot of tallow, or that they should be manufactured by a particular person, it would be an agreement for manufacture, and not for sale. *Gardner* v. *Joy*, 9 Met., 177; *Lamb* v. *Crafts*, 12 Met., 353.

A test, in some cases, is whether the person, contracting to take the article, is bound to receive one which may be bought or procured by the other party after the contract. If he is, then it is a case of sale.

In the case before us, there was no agreement for any particular wood; no stipulation that it was to be cut from plaintiff's land, and no limitation of time when it should be cut. The contract might be fulfilled by the delivery of wood already cut or bought of another person. There was no element in the bargain which implied a "*manufacture*," of an article, within the most liberal definition of that word. It was very clearly a case of sale within the statute. *Winterman* v. *Meigs*, 4 Cush., 499.

Was there any acceptance of the wood, within the other clause of the same statute?

The language of the statute, on this point, requires that there should be an acceptance, as well as delivery. There must be not merely the act of delivery, but there must be such an acceptance by the vendee as vests the property, so that he can take no exceptions to the quantity or quality. *Maxwell* v. *Brown*, 39 Maine, 98.

In this case, by the testimony of the plaintiff, there had been no acceptance. He says, that, "of course, it was to be measured and inspected in the Spring, and always was." There was no evidence that any agent of defendants had accepted the wood, or done any act from which an acceptance could be inferred.

The case, on both points, is within the statute, and the ruling of the Judge on this point was erroneous.

*Exceptions sustained.— New trial granted.*

TENNEY, C. J., APPLETON, CUTTING and DAVIS, JJ., concurred.

GOODENOW, J., dissenting.

In determining whether the instructions of the Judge to the jury were or were not correct, it must be considered as proved, that the defendants, by their agent or agents, duly authorized, in the month of June, 1855, agreed with the plaintiff, to take all the wood he would put on the line of their road that season, at the same price they had paid him before for wood, and more, if the wood was better; and that, in September, 1855, the plaintiff had cut and hauled, and then had over two hundred cords on the line of the road, hauled according to the agreement made with Mr. Corser, in June; hard and soft wood together, better, in the opinion of the plaintiff, as a whole, than the lot put on and sold by him to the defendants the winter before; and that the plaintiff gave notice to Mr. Corser of the fact, and, at the same time, remarked to him that he wanted his wood measured up, as he wanted his money; that Mr. Corser made no objection to the quantity, quality, time or place of depositing the wood, but, on the contrary, said to the plaintiff, that *they would send Mr. Hodgkins, of Poland, to measure it.* Subsequently, in October, 1855, the plaintiff saw Mr. Corser again, at Bethel, and he told the plaintiff, he would have the wood measured up in a few days, as soon as they had measured some they had bargained for with Mr. Chapman; that there was no misrepresentation or deception on the part of the plaintiff; that he had fully and honestly done all he could do or was bound to do by the terms of the agreement; that, while he was performing on his part, no intimation was made to him, by the defendants, that they should not receive and pay for the wood; and that, after full performance on his part, Mr. Corser twice agreed with him, in September and October, *to send a surveyor and have the wood measured.* It seems to me that this was a contract executed. Performance on the part of the plaintiff, and ratification or acceptance on the part of the defendants, by their duly authorized agent, "after they had the means of exercising their right of rejection." The quantity was uncertain and to be ascer-

Edwards *v.* Grand Trunk Railway Co.

tained by admeasurement, to be made by the defendants. The price depended on the quality. *Id certum est,* &c.

If, by reason of the statute of frauds, the plaintiff cannot recover upon this state of facts, it should be regarded as a statute to promote, rather than to prevent, frauds. If it was not a contract executed and ratified, it was an agreement entered into to be performed within one year, and not a contract of sale.

" When the contract is a contract of sale, either of an article then existing, or of *articles which the vendor usually has for sale in the course of his business,* the statute applies to the contract, as well where it is to be executed at a future time, as where it is to be executed immediately." " But where it is an agreement with a workman to put materials together and construct an article for the employer, whether at an agreed price or not, though in common parlance it may be called a purchase and sale of the article to be completed *in futuro,* it is not a sale until an actual or constructive delivery and acceptance; and the remedy for not accepting is on the agreement." 21 Pick., 207. And why? Because one party may, otherwise, be greatly injured by the fault of the other. He cannot be left *in statu quo.*

He has made sacrifices and incurred expenses, which he would not have made but for the agreement. Men are bound to act in good faith. They are not at liberty to deceive and injure each other, with impunity.

A man may be as essentially injured by cutting and hauling his wood, under an agreement, and then not having it received and paid for, as by manufacturing a carriage, or any other article, under an agreement, and then not having it received and paid for. Where the reason is the same the law is the same. Where the contract is for " *an article which the vendor usually has for sale in the course of his business,*" it may well be otherwise; as in the case of candles or tallow. They may be kept without deterioration, or readily find another market. But wood, in large quantities, in the country, can only find a ready market at or near the railroads; and its de-

terioration, when exposed to the weather, is rapid. No prudent man would cut his growing wood, in the country, in large quantities, without knowing when and where he could find a market for it. If the plaintiff has been deceived and injured by the defendants, they should not be allowed to take advantage of their own wrong. The statute should have a reasonable construction.

In *Irvine* v. *Stone*, 6 Cush., 508, cited by counsel for the defendants, the cargo of coal was to be delivered in Boston, by the terms of the agreement. The defendants countermanded the order for the coal, before its arrival in Boston, and positively declined receiving it.

In *Mining Co.* v. *Glass Co.*, 9 Cush., 116, the coal was not consigned to the party ordering it, but, on the contrary, was consigned to the plaintiff's own agent. There was an attempt to prove a usage, " that when coal ordered is delivered on board a vessel *consigned to the party ordering it*, that is a compliance with the order, and the coal is thereafter at the risk of the party ordering it. But the facts did not bring the case within the usage as proved. The court say, " the bill of lading gave the defendants no right to, or control over the coal, and when indorsed and offered to the defendants' agent, was promptly rejected." They also say, " when orders have been received and executed, and delivery has been made to the master of the ship, and bills of lading signed and forwarded, the seller is *functus officio*, and can do nothing more, except so far as he may have a right of stoppage *in transitu.*"

In *Maxwell* v. *Brown*, 39 Maine, 98, the coal was to be delivered at Portland, the vessel in which it was shipped was wrecked, and the coal never arrived at Portland. The defendant was to pay freight, but designated no vessel by which it should be sent. " The coal was shipped by the plaintiffs on board a vessel chartered by them, and consigned to the defendant, and the master signed a bill of lading in the usual form, engaging to deliver the coal to the defendant *upon his paying the freight.*"

Edwards *v.* Grand Trunk Railway Co.

In *Sewall* v. *Fitch*, 8 Cowen, 219, the Court say, "formerly the King's bench held that the statute did not apply to executory contracts." (*Towers* v. *Osborne*, 1 Stra., 506; *Clayton* v. *Andrews*, 4 Burr., 2101.) In neither of those cases, however, was it necessary to rely upon such a principle. The first was for a coach, to be made; and the second for grain, *to be yet threshed.* So that those cases were rightly determined, upon a wrong principle, as has since been held, both by the Common Pleas and King's Bench. In *Randeau* v. *Wyatt*, (2 H. Bl., 63,) Lord LOUGHBOROUGH said, the case of *Towers* v. *Osborne* "was plainly out of the statutes, not because it was an executory contract, as it has been said, but because it was for work and labor to be done, and materials and other necessary things to be found, which is different from a mere contract of sale, to which species of contract alone the statute is applicable." The same point was decided in *Cooper* v. *Elston*, (7 T. R., 14,) where the King's Bench adopt *Randeau* v. *Wyatt*, "as sound law, admitting the distinction there taken." See also *Bennett* v. *Hull*, 10 Johns., 364, and *Crookshank* v. *Burrell*, 18 Johns., 58.

It does not appear by the facts stated, whether the wood furnished by the plaintiff was deposited by him on his own land, or the land of the defendants, or on that of a stranger. But it does appear to have been deposited on *the line of the road, according to the agreement*, and at the place or places where the defendants agreed to receive it. It may not appear that the wood to be furnished was in growing trees, at the time the agreement was made, but it may be fairly inferred that such was the fact. It was to be as good as the wood which had been furnished by the plaintiff before. It might be better. It was uncertain. And the price was also uncertain. How can this be regarded as a contract of sale, till the wood was cut, hauled and delivered! When cut, hauled and delivered, the law would imply a promise to pay so much as it was worth, without proof of any previous agreement. Upon proof that it was as good as the sample, the plaintiff would be entitled to the same price the defendants had paid him be-

fore; upon proof that it was worth more, or better, the plaintiff would be entitled to recover more. In my opinion, the exceptions should be overruled, and there should be judgment on the verdict.