J. H. BOWERS, *Plaintiff in Error*, v. DR. P. PHILLIPS Co., *Defendant in Error*.

Division B.

Opinion filed August 29, 1930.

Petition for rehearing denied September 30, 1930.

*Bryant & Trantham,* for Plaintiff in Error;

*Huffaker & Edwards* and *Akerman & Akerman,* for Defendant in Error.

BUFORD, J.—In this case the defendant in error was plaintiff in the court below and will hereinafter be called plaintiff and the plaintiff in error was defendant in the court below and 'will hereinafter be called defendant.

The parties entered into a contract for the purchase and sale of certain fruit. The contract was 'as follows:

"Fruit Contract.

"This agreement made and entered into this the 30th day of November, A. D. 1926, by and between Green Rives, as agent for Dr. P. Phillips Company, of Orlando, Florida, hereinafter designated as the buyer, and J. H. Bowers of Brunswick, Md., c/o Peoples Nat'l Bank, hereinafter designated as the grower.

"WITNESSETH: That the grower do hereby sell and convey to the buyer his entire crop of oranges, grapefruit and tangerines blooming in the year 1926 and merchantable at the time of picking on one grove located at Lots 11 and 12, Sec. 23, Lakeland Hg. on the following terms.

"In bulk for the total sum of Seventy-five Hundred and No/100 dollars ($7,500) payment to be made as follows:

"$1,000.00 on the signing of this contract.

"$1,000.00 Jan. 1st, 1927.

"Balance when fruit is picked.

"Said grower hereby acknowledges receipt of One Thousand and no/100 dollars ($1,000.00) to apply on

the purchase price of said fruit and to be deducted from the final settlement under this contract. Should the fruit not be taken by the Buyer the amount receipted for hereby shall be forfeited to the Grower as his sole liquidated damages hereunder.

"J. H. Bowers agrees to deliver to Dr. P. Phillips Co. Five Thousand (5,000) boxes of Grapefruit for the $7,500.00.

"IN WITNESS WHEREOF we have hereunto set our hands and seals the day and year first above written.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"J. H. BOWERS,
Grove Owner or Agent.

"WITNESSES:

. . . . . . . . . . . . . . . . . . . . . . . . . .

"GREEN RIVES,
Agent for Dr. P. Phillips Co."

The $1,000.00 cash was paid upon the execution of the contract and the other $1,000.00 was paid January 1st, as per terms of the contract. After the payment of the second thousand dollars and before the fruit was gathered, it was destroyed by a freeze. The seller, Bowers, did not deliver to the purchaser, Dr. P. Phillips Co., 5,000 boxes of grapefruit as he was bound to do under the terms of the contract. the plaintiff sued to recover the Two Thousand ($2,000) Dollars together with interest thereon and also $2,500.00 for expected profits and $500.00 for expense in advertising the fruit for sale. The verdict was for $2,000.00 with interest and was so directed by the court.

The only question necessary for this Court to determine is whether or not under the terms of the contract the plain-

tiff was entitled to recover the money which he had paid to the defendant.

The declaration was in ten (10) counts. The first seven were the common counts. The 8th, 9th and 10th counts are special counts in damages for breach of the contract. It will be observed that the contract contains the following clause, to-wit:

"Said Grower hereby acknowledges receipt of One Thousand and no/100 dollars ($1,000.00) to apply on the purchase price of said fruit and to be deducted from the final settlement under this contract. Should the fruit not be taken by the Buyer, the amount receipted for hereby shall be forfeited by the Grower as his sole liquidated damages hereunder."

The contract also contains the following clause:

"J. H. Bowers agrees to deliver to Dr. P. Phillips Co. five thousand (5,000) boxes of Grapefruit for the $7,500.00."

These two clauses govern the construction of the contract and the construction which must follow is that Bowers agreed to sell and deliver to Dr. P. Phillips Co. five thousand (5,000) boxes of grapefruit for $7,500.00 and that he received at the execution of the contract $1,000.00 to be applied on the purchase price of the fruit and to be deducted from the final settlement under the contract and he agreed that in the event Dr. P. Phillips Co. did not take the fruit when tendered to it that he would accept the $1,000.00 paid as sole liquidated damages for the failure of Dr. P. Phillips Co. to take the fruit. He then bound himself to deliver to Dr. P. Phillips Co. 5,000 boxes of grapefruit and it must be construed that these grapefruit were to be delivered during that fruit-shipping season.

For causes not within the control of the plaintiff, the particular fruit contracted for was destroyed and could not be delivered and the defendant did not deliver any other fruit in lieu thereof, but it is alleged and proven that he failed and refused to deliver the 5,000 boxes of merchantable grapefruit.

It is insisted by counsel for the plaintiff in error that this case is of unusual importance to the citrus industry of Florida and it may be, but it is chiefly important in that it shows the necessity for care which should be exercised by a grower in making and entering into contracts. The grower can not expect the courts to make his contracts for him. He must expect to be bound by the contract which he makes, just as must every other individual transacting business, and if he makes a contract obligating himself to deliver so much fruit for a stipulated sum of money and receives a cash payment in consideration of the execution of such contract he must deliver the fruit, or at least return the money so received. It is quite an easy matter for him to so frame his contract as to be under no obligation of this sort and to so frame the contract as to have the buyer assume the risk of any loss or damage to the fruit if such is the intention of the parties when the contract is made.

We think there is no reversible error exhibited by the record and, therefore, the judgment should be affirmed. It is so ordered.

Affirmed.

WHITFIELD, P. J., and STRUM, J., concur.

TERRELL, C. J., and BROWN, J., concur in the opinion and judgment.

ELLIS, J., dissents.

BROWN, J. (Concurring) : I do not think that under this contract, the title passed to the Dr. Phillips Company. The contract was to deliver 5,000 boxes of grapefruit, and elsewhere in the contract it was provided that the fruit should be "merchantable" at the time of picking. Neither of these provisions were, or could be, complied with by Bowers, but this was not the Phillips Company's fault. Under the authorities, the contract was still executory when the freeze occurred and the title to the fruit had not passed, so as to make the loss by the freeze fall on the Phillips Company. Tripp v. Wade, 82 Fla. 325, 89 So. R. 870; 24 R. C. L. 14, 18; 35 Cyc. 274. The seller not being able to deliver the identical property contracted to be sold, in accordance with the terms of the contract, and not having tendered the delivery of similar property in the place of it—if that could have been done under the contract— the purchaser was entitled to the return of the advance payments.

ELLIS, J., (Dissenting)—I think that the contract is an executed contract of sale and that the happening of the freeze was an incident which releived the plaintiff in error Bowers from the promise to deliver five thousand boxes of grapefruit. Nor do I think that the clause wherein he agreed to deliver five thousand boxes of grapefruit for the seven thousand five hundred dollars converted the contract into an executory contract of sale.

The contract was executed on the 30th day of November, 1926. At that time the fruit from the 1926 bloom had formed on the trees and was nearing, if it had not reached, full maturity. It was not as if the contract was made before the trees put on their 1926 bloom and the fruit was not in existence but its formation and growth dependant upon favorable seasons to come. The fruit was already in existence hanging upon the trees in a state nearing, if it had not indeed reached maturity.

Under such circumstances the contract operated as a severance of the fruit from the freehold and the fruit became personal property, the title to which passed to the purchaser upon acceptance of the contract by him. Oranges, grapefruit and tangerines produced by that grove were sold to the purchaser. The fruit was sold in bulk for the agreed price of seventy-five hundred dollars. No time limit was placed upon the purchaser in which the gathering or picking of the fruit was required to be done. If the buyer refused to take it the seller under another clause in the contract agreed to accept as his liquidated damages the two thousand dollars paid on the purchase price.

After the fruit was ready for the market but before it was gathered and removed from the trees, as it was the plaintiff's duty to do according to the averments of the first and second additional pleas which were eliminated on demurrer, "severe cold weather intervened and damaged the fruit so that the same was rendered unfit for marketing", whereupon the purchaser refused to take the fruit from the trees.

Now the theory on which the declaration is formed as set out in the tenth count is that on making the contract with the defendant the title to the fruit passed to the plaintiff, that is that the contract was an executed contract of sale, for it is alleged that the plaintiff employed salesmen and went to considerable expense in advertising and selling the crop of grapefruit and did succeed in selling it to a person who agreed to buy it at the price of ten thousand dollars.

He thus exercised the right to sell that which he had acquired by his purchase. To construe the declaration to mean that the plaintiff sold the fruit which later he expected to purchase is to ignore the plain meaning of

the words chosen by him in his own pleading to set up his cause of action. It is to violate a rule for the interpretation of the allegations contained in a pleading.

But aside from the interpretation which the plaintiff and defendant seemed to have placed upon the contract in the pleadings, the rules of law applicable to the interpretation of such a contract establish its character as an executed contract of sale under which the title to the fruit passed upon the execution of the contract to the buyer. The words of bargain and sale were used in the present tense, "do hereby sell and convey". There was delivery of the bill of sale, neither the price, quantity or identity of the thing sold remained to be determined. The "entire crop of oranges, grapefruit and tangerines blooming in the year 1926 and merchantable at the time of picking" on a certain grove was sold in bulk for the total sum of seventy-five hundred dollars.

Ordinarily the delivery of the bill of sale has the legal effect of consummating the sale and transferring the title to the property. See Shealy v. Edwards, 73 Ala. 175, 49 Am. R. 43; Shriner v. Meyer, 171 Ala. 112, 55 So. R. 156, Ann. Cas. 1913 A 1103; 24 R. C. L. 17; Griffin v. Chubb, 7 Tex. 603, 58 Am. Dec. 85.

The case of Tripp v. Wade, 82 Fla. 325, 89 So. R. 870, is not analogous to this case as the contract in the Tripp case required the weighing and delivering of animals at a certain place and the price ascertained from the weight at the point of delivery, the court holding that contract to be executory.

It is not the delivery or tender of the property nor the payment or tender of the purchase money which constitutes a sale. The sale is good and complete as soon as both parties have agreed to the terms then the rights of both are instantly fixed. When the terms of the sale are

agreed on and the bargain is struck and everything that the seller has to do with the goods is complete the contract of sale becomes absolute as between the parties without actual *payment* or *delivery* and the property and the risk of accident to the goods vest in the buyer. See 2 Kent's Comm. 492; Tarling v. Baxter, 6 Barn. & Cress. 360; Gardner v. Howland, 2 Pick. (Mass.) 599; State v. Fuller, 5 Ired. L. (N. C.) 26; Hooban v. Bidwell, 16 ·Ohio 509, 47 Am. Dec. 386; Ricker v. Cross, 5 N. H. 570, 22 Am. Dec. 480; England v. Forbes, 7 Houst. (Del.) 301, 31 Atl. R. 895; Commonwealth v. Hess, 148 Pa. St. 98, 23 Atl. R. 977, 33 Am. St. R. 810.

When the words of a contract are ''I hereby sell'' the words clearly indicate the intention of the parties to make a present sale and transfer of the property, notwithstanding that it ·is not delivered and the price remains unascertained dependent upon conditions in the future. See First Nat. Bank of Ottumwa v. Reno, 73 Iowa 145, 34 N. W. R. 796; 1 Mechem on Sales 395, 411.

Where one purchases personal property of another and the buyer leaves it with the seller until the performance of subsequent acts by the buyer such as weighing, measuring or otherwise ascertaining the quantity it is left at the risk of the buyer, unless there is an express contract to the contrary, the title having passed immediately upon the trade being closed. See Phillips v. Moor, 71 Me. 78.

In a case where the property is to be produced the question when the title passes is dependent on the intention of the parties and when there is any dispute as to the terms and material circumstances of the agreement it is a question for the jury to determine. 24 R. C. L. 30.

It has been held that the sale of a crop *yet to be planted* will take effect the moment the crop· appears and the title vests potentially as soon as the subject arises. See Briggs

v. United States, 143 U. S. 346, 36 L. Ed. 180, 12 Sup. Ct. R. 391; Andrew v. Newcomb, 32 N. Y. 417.

But the crop sold was *in esse*. The bloom of the 1926 crop had produced the fruit which at the time of sale had not only formed but had grown to maturity or nearly if not completely so. The crop was not in the class of things potentially in existence but reasonably certain to come into existence as the natural increment, probable result or usual incident of something already in existence and then belonging to the vendor, but even in such cases the title vests in the buyer the moment the thing comes into existence. See 1 Mechem on Sales, p. 183.

In the case at bar the thing was in existence when the contract was made. The subject matter of the contract was within that class of contracts for the sale of *fructus industriales* and therefore within the seventeenth section of the Statute of Frauds instead of the fourth section. Sec. 5780, Comp. Gen. Laws.

Under the common law while the purpose of the seventeenth section of the Statute of Frauds was simple it entailed much inconvenience to business men on account of the requirements of the statute. That condition developed opposition to a liberal construction of the section, the result was that the plain meaning of the section was covered up by an overwhelming amount of close and technical interpretation the purpose of which was to minimize the operation of the statute. The first question to arise was what contracts are included in the words "contracts for the sale of goods, wares and merchandise" so as to be brought within the statute. The first effort to minimize the effect of the statute was made in distinguishing between an executed or executory contract, holding that the act applied only to the former class or those in which title passed immediately without delivery. See Towers v. Osborne, 1 Strange. 506;

Clayton v. Andrews, 4 Burr. 2101; Groves v. Buck, 3 M. & S. 178.

That view, however, never obtained in the United States, the courts holding that the statute applied to executory contracts for future delivery as well as present sales. Bennett v. Hull, 10 John.'s 364; Edwards v. The Grand Trunk Ry. Co., 48 Me. 379; Smith v. Stanton, 15 Vt. 685; Atwater v. Hough, 29 Conn. 508, 513 text.

Section Four of the Statute of Frauds relates to contracts for the sale of lands or any interest in or concerning them and provides that no contract shall be actionable unless some memorandum thereof is made in writing and signed by the party to be charged. Sec. 5779, Comp. Gen. Laws.

The question naturally arises, under what section does the contract come when the subject matter is annexed to the soil but by severance will become personalty.

When the claim is made that the title passes the question is difficult. Out of the controversy has grown the distinction between natural products of the soil or *fructus naturales* and those products which are the result of industry such as planting or cultivation. The American and English cases are in accord on the proposition that if the product is to be severed from the soil immediately or within a reasonable time it matters not by whom, it is a contract for the sale of goods, wares and merchandise and not for the sale of an interest in lands. See Cutler v. Pope, 13 Me. 377; McClintock's Appeal, 71 Pa. St. 365; Smith v. Bryan, 5 Md. 141; Banton v. Shorey & Porter, 77 Me. 48; Sterling v. Baldwin, 42 Vt. 306; Purner v. Piercy, 40 Md. 212.

In such case the title to the product is held to pass immediately together with a license to go upon the land and gather and remove the fruit. The holding is universal that a contract for the sale of *fructus industriales* is a contract for the sale of goods, wares and merchandise. Bricker v.

Hughes, 4 Ind. 146; Moreland v. Myall, 14 Bush. (Ky.) 474; Marshall v. Ferguson, 23 Cal. 66.

Mr. Tiedeman in his work on sales says that when the purpose of the parties is that the vendor shall retain possession of the goods after the sale in the capacity of a bailee of some sort, or when delivery is impossible because the goods are growing crops and must remain in the soil until they are ripe for harvest, the law implies a delivery from a change in the character of the vendor's possession. A growing crop, says he, could not be delivered unless the land was also transferred and the transaction would become a sale of real property hence the distinction between the *fructus naturales* and *fructus industriales*. Tiedeman on Sales, p. 153; 1 Williston on Sales.

The rule is unquestioned that under a completed contract of sale the property in the goods passes at once from the seller to the buyer at the place where the contract becomes complete. If, however, the seller merely agrees to transfer the property at some future day or the agreement contemplates some future act or condition necessary to a complete transfer the contract is executory and no title passes to the buyer as against the seller or person claiming under him. Certain words or phrases standing alone are not the sole criterions by which the character of the contract is determined, whether it is an executed or an executory contract. So the contract must be construed with reference to other provisions and according to what appears to have been the real intention of the parties. See 35 Cyc. 274.

In accordance with this rule the words and phrases used as well as the circumstances of the transaction should be examined to determine the real intention of the parties. In the first place the contract contains the words "do hereby sell and convey to the buyer" the entire "crop of oranges, grapefruit and tangerines" blooming in the year 1926. "In

bulk, for the total sum of seventy-five hundred and no/100 dollars ($7,500) payment to be made as follows: $1,000.00 on the signing of this contract, $1,000.00 Jan. 1st, 1927. Balance when fruit is picked.''

Here certainly are clear words of present sale and transfer of the property to the buyer. If the buyer was to pick the fruit no question of delivery could possibly be injected into the controversy. It would be an executed contract for the sale of personalty with a license to enter upon the land and gather it. It would be good as to innocent purchasers of the land. A parol reservation of the fruit would be good against a conveyance of the land. If the contract was a mere executory contract of sale it would not.

If the purchaser was to pick the fruit there was an implied duty to do so when it was ripe and he could not delay the picking to such time as the fruit became overripe and decline to take it on the ground that when he was ready to pick it was unmerchantable. The contract contained a provision against such a contingency by providing that if the fruit should ''not be taken by the Buyer, the amount receipted for hereby ($1,000.00) shall be forfeited to the Grower as his sole liquidated damages hereunder.''

Under this provision of the contract when the fruit was matured and ready for the market the grower could have called upon the buyer to remove it or forfeit the amount receipted for by the contract. Could under such provision of the contract the buyer by procrastination or negligence delay the gathering of the fruit until its marketability was imperiled by too full maturity or the hazard of the seasons? If the contract was executory and it was the grower's duty to gather and deliver the fruit the buyer could await delivery by the grower and decline the fruit if it was unmarketable because too ripe for shipment. If the contract was an executed contract of sale he could not de-

lay the picking of the fruit beyond a reasonable time because if he did the act would result in a forfeiture of the one thousand dollars paid and a breach of the contract which would have authorized the grower to retake possession of the crop and dispose of it at his pleasure.

If after the execution of the contract the grower had sold the land the buyer could maintain replevin for the fruit which was the subject of the contract of sale, which he could not do if the contract was executory.

The plaintiff alleged in his declaration that he had sold the fruit to a certain person at a specified price. He could not have sold the fruit if he had no title to it, because one cannot sell that which he does not own. So the plaintiff treated the property as his own and exercised the right to sell it, which may be considered as the conduct of the parties under the agreement in arriving at their intention in making the contract. Rodgers v.. Bachman, 109 Cal. 552, 42 Pac. R. 448; Perkins v. Mettler, 126 Cal. 100, 58 Pac. R. 384; Studebaker Bros. Co. v. Mau, 13 Wyo. 358, 80 Pac. R. 151; Barrett v. Pritchard, 2 Pick. (Mass.) 512, 13 Am. Dec. 449.

The pleas averred that it was the duty of the buyer to gather the fruit. If that averment was true it was a complete defense as showing an executed contract of sale.

Now it cannot be contended that anything transpiring after the execution of the contract could affect the character of the contract, the nature and character of which was established when the contract was executed. If there had been no "spell" of cold weather affecting the merchantability of the fruit and when the buyer came to gather it and deliver it under his sale to the person to whom he had sold it and he found that there were only 4900 boxes of grapefruit would his remedy against his vendor have been a recission of the contract or a reduc-

tion of the balance to be paid by the proportionate value of the 100 boxes which the crop lacked of completing the full quota?

If the latter, then the clause under which the seller agreed to deliver 5000 boxes of grapefruit was a mere guaranty that the grove would produce that quantity of that ·particular fruit. If the clause was a condition precedent to the sale then any shortage would have operated to defeat it. If it was not a condition to the completed sale then the contract was an executed contract and not an executory one.

If it was a condition to the completed sale could not the seller have picked the fruit at maturity when it was ready for the market and tendered it to the buyer? But there is no word in the contract nor act in the conduct of the parties to indicate that such was the intention of the parties. On the other hand it is perfectly apparent both from the words of the contract and the conduct of the parties that the buyer was privileged to select his own time in the matter of gathering the fruit. And he availed himself of that privilege or right under the agreement by waiting until after the fruit was ready for picking and marketing, notwithstanding that at the time of sale and when the fruit was ready for picking there was an excess of 5000 boxes of grapefruit in the grove.

In a contract of this nature when the agreement was that the grove would produce 5000 boxes of grapefruit, or that the seller would deliver that quantity, the delivery is excused when the delivery cannot be made owing to the perishing of the thing without any fault of the seller. As for instance when the crop failed entirely owing to the blight which no skill, care or diligence of the defendant could prevent. See Howell v. Coupland, 9 Q. B. C. 462; Rice & Co. v. Weber, 48 Ill. App. 573.

710

To construe the clause in which the seller agreed to deliver 5000 boxes of grapefruit as a condition of the sale to be performed by him before the title vested in the buyer is to ignore the remaining portions of the agreement and to require of the seller the performance of an act which might become impossible of performance by the negligence, procrastination or wrong of the buyer. All that the contract contemplated was that the buyer had purchased the fruit which was in existence, that he was to pick and gather it and when it was ready for gathering there should be 5000 boxes of grapefruit in the grove.

If the seller had the right to delay the taking of the fruit from the trees beyond the time when it was ready for the mraket he had it in his power by his own wrong to cause a breach of the agreement by the seller, which was not the intent of the parties as shown by the agreement or any of the circumstances of the transaction.

I think the pleas were a good defense to the declaration, the demurrer to them should have been overruled and that the judgment should be reversed.