158 So.2d 780 (1963)
Horace F. McDONALD, Appellant,
v.
Everette E. CONNELL and Dean T. Davis, d/b/a Alva Fruit Co., Appellees.
No. 3487.
District Court of Appeal of Florida. Second District.
December 18, 1963.
W.W. Whitehurst and T. Hoyt Carlton, Wauchula, for appellant.
J. Hardin Peterson, Jr., Lakeland, for appellees.
SMITH, Chief Judge.
In the court below, the appellant was plaintiff and the appellees were defendants. This is an appeal from the trial court's Final Decree, entered in chancery, dismissing with prejudice the plaintiff's amended complaint.
*781 The complaint, as amended, was essentially for rescission and cancellation of the following contract:[1]
"FRUIT PURCHASE CONTRACT
"THIS AGREEMENT made and entered into by and between Alva Fruit Company * * *, party of the first part, and Horace F. McDonald, party of the second part.
"WITNESSETH: That the said party of the first part has this day bargained and sold to the said party of the second part all of the crop of good, merchantable fruit, consisting of approximately the following quantities and varieties at the following respective prices:

"Boxes 25,000
"Variety Valencias Oranges
"Per Box @ 50¢ lb. solids delivered
 M & O Corporation Plant, 12
 ratio, of Concentrate
 quality, Minimum
 of 11.00 solids
"Removal Date not to start delivery
 before April 1,
 1962, or, unless
 otherwise directed
 by buyer

which said fruit is all of the crop for the season 1961-1962 now on the trees of the grove owned by the said party of the first part and known as the Various Groves grove, located about ____ miles ____ from ____, Florida.
"The sum of $12.500.00 is hereby paid by the said party of the second part to the said party of the first part to apply upon the purchase price of said fruit, the receipt of which is hereby acknowledged by the said party of the first part upon the said purchase price. It is mutually understood and agreed between the parties hereto that the balance of the purchase price shall be paid within 10 days after the fruit is picked.
"It is further understood and agreed that the said party of the second part shall have the right to enter the said grove to pick and remove the said fruit at all reasonable times.
"It is further understood and agreed that the word `merchantable,' as herein used, shall mean fruit free from frost, scab or other defects which would render it a cull and of such size or grade as will permit its shipment in Interstate Commerce under regulations issued by any State or Governmental authority.
"The said seller does hereby covenant and warrant that the said fruit is free from all liens and incumbrances and he has a lawful right to sell the same and to authorize its picking and removal.
"It is further understood and agreed between the parties hereto that the amount to be paid for said fruit shall be based upon the merchantable fruit so picked and removed by the buyer and not upon the crop as above estimated and in the event that the merchantable fruit received does not amount to as much as the advance payment the party of the first part agrees to pay any deficit, the loss by casualty or otherwise, if any, to be the loss of the said seller.
"The said seller agrees that he will not, until the removal of said fruit, fertilize or spray the said fruit or grove or permit the same to be done, with any fertilizer or materials that will injure said fruit or cause it to drop.
"The said seller agrees that in the event of strike, embargo, quarantine, acts of God or other conditions beyond *782 the control of the buyer, that the said buyer is prevented from picking the said fruit, that the said buyer shall have such additional time for the removal thereof as the said cause for delaying the picking and removing thereof. In the event that the vendor is a dealer, commonly known in the trade as fruit buyers, said vendor warrants that the fruit contracted for herein may be the fruit on more than one grove, which has been purchased from various growers and it warrants that it will deliver the said merchandise on the date specified, free and clear of all encumbrances.

"IN WITNESS WHEREOF the said seller has hereunto set his hand and seal and the said buyer has caused this contract to be executed by its authorized agent, this the 9th day of February, 1962."
 [Signatures omitted.]
The essential allegations of the amended complaint were as follows: The plaintiff McDonald is president of M & O Company, Incorporated, which company has for many years been engaged in the business of processing citrus fruit for the production of juices. McDonald has for many years acted as purchasing agent for the company. In such capacity, McDonald has become fully acquainted with the defendants as citrus fruit buyers, and he well knew that the defendants have been engaged for many years in buying citrus fruit from growers and then re-selling the same to processors. McDonald recognized the reputation and ability of the defendants to furnish accurate estimates of the amount of citrus fruit growing in the groves from which they intended to purchase fruit for resale. In February of 1962, the defendants approached the plaintiff to negotiate a sale of valencia oranges which the defendants said they had purchased from certain groves located in Lee, DeSoto and Hardee counties. The defendants represented to McDonald that, according to their accurate estimates, there was a total of 25,000 boxes of valencia oranges in all of the groves referred to. McDonald, relying upon the defendants' aforesaid reputation, fully accepted as accurate the defendants' estimate that there were growing and in existence 25,000 boxes of valencia oranges in the groves. The plaintiff's company, in order to acquire enough fruit and then provide sufficient concentrate, and to insure both the quantity and quality thereof, has consistently required that its fruit purchase contracts provide a designation of each and every citrus grove in which the fruit to be purchased is growing and from which the same is to be harvested. For the same reasons, each of such contracts has contained a provision that the company, as purchaser and owner of the fruit, shall have the right to pick and remove the fruit at all reasonable times. There has consistently been a further provision that the citrus groves in which the fruit to be purchased is growing shall not be sprayed with any material which would injure the fruit or prevent it from being processed. Before entering into the contract in dispute here, the plaintiff McDonald informed the defendants that he would purchase the valencia oranges at the price offered, upon the condition that, pursuant to his company's aforesaid policy, the citrus groves in which such fruit to be purchased was growing should be fully designated and identified as to the owners thereof, and that such designation should be made a part of the contract. The defendants stated that they did not have with them a list of the groves identified by the names of the owners, but that they would furnish the plaintiff with such a list or schedule and make it a part of the contract. Thereupon, the parties entered into the contract set out above, with the understanding that the words "Various Groves" would be inserted into the contract subject to modification and definition by the written list or schedule to be supplied later by the defendants, which list or schedule would designate the groves contemplated by the contract and the owners of such groves. According to the plaintiff McDonald, he would never have entered into the contract without such designation *783 and identification, "for the reason that the essential provisions of the contract providing the right of plaintiff to enter said citrus groves and pick and remove the citrus fruit * * * would have been nullified as well as the provisions against spraying of [the] citrus fruit with material injurious to such fruit for processing purposes. * * *" The defendants were aware of the plaintiff's position in this matter. McDonald paid the defendants the $12,500 advancement solely upon their agreement that the list or schedule designating and identifying the groves would be a part of the fruit purchase contract. Thereafter, in accordance with said agreement, the defendants delivered to the plaintiff a complete list and schedule of all citrus groves in which the fruit was growing, with an estimate that a total of 25,700 boxes of valencia oranges were growing in such groves. (A copy of the list and the letter of transmittal, including the estimate, were attached to the amended complaint.) At no time after signing the fruit purchase contract did the plaintiff have reason to believe that the defendants' estimate was incorrect. Pursuant to the terms of the contract, the plaintiff notified the defendants to begin delivery of the fruit on April 10, 1962. On that date and in the next four days following, the defendants did deliver a total of 4,117 boxes of valencia oranges. The plaintiff discovered, however, that these oranges had not been harvested from any of the listed groves. Thereupon, the plaintiff instituted an investigation to determine the reason for the defendants' violation of the fruit purchase contract. According to the plaintiff, he discovered that the defendants had picked, removed and sold 7,300 boxes of valencia oranges from some of the listed groves and, in addition, had entered into a contract to sell to a third party 1,500 boxes of valencia oranges from another grove included on the list. In the words of the plaintiff's amended complaint, the defendants have "deliberately and fraudulently made it impossible for them to carry out their contract with the Plaintiff," by reason of the sale and removal of said valencia oranges from the said groves, leaving less than one-half of the fruit bargained and sold to plaintiff remaining in the citrus groves covered by the contract. McDonald notified the defendants that he would not be further bound by the contract and that he was renouncing all obligations thereunder. In conclusion, the amended complaint prayed that the contract be rescinded and cancelled and that the plaintiff be relieved and discharged from all obligation to the defendants under said contract. Pursuant to leave granted, M & O Company, Incorporated, was added as a party plaintiff.
The defendants filed their motion to dismiss the amended complaint, asserting primarily that the foregoing alleged facts were not sufficient to state a cause of action. The motion was granted, and plaintiffs were not given leave to amend. This appeal ensued.
The plaintiff contends that under the terms of the contract the title to the valencia oranges passed to himself, as purchaser, party of the second part in the contract. This contention must be viewed in the light of the well-established rule that the intent of the parties is the controlling factor:
"The intent of the parties as expressed in the language used must govern in so far as it may be given effect without violating legal principles. The intention of the parties must be gathered from the whole agreement or instrument and the language employed, and in case of doubt by reference to the subject matter, the situation and relation of the parties, the course of dealing between them, and the object or purpose which they had in view, together with all the facts and circumstances surrounding the transaction and attending the making of the contract." 77 C.J.S. Sales, § 71a.
It is obvious that the printed form used by the parties to inscribe their contract is a form intended for use where the seller is the grower of the citrus fruit to be sold. An examination of the printed form, together with the allegations of the amended *784 complaint, discloses (1) that under normal usage of such a contract the seller bargains and sells to the purchaser all of the fruit crop with the right to enter the groves and pick and remove the fruit at all reasonable times; and (2) that the amount to be paid for the fruit would be based upon the amount of merchantable fruit picked and removed by the purchaser. Thus, it is evident that the printed form of the contract contemplated the passing of title to the purchaser, as was held with respect to similar forms of contract in Gregg Maxcy, Inc. v. Bateman, 1937, 126 Fla. 747, 171 So. 811, and Metcalf v. Keene & Co., 1935, 122 Fla. 27, 164 So. 704.
However, in the instant situation, the printed form of contract was modified because the sellers were not the growers but were dealers  commonly known in the trade as fruit buyers. The parties modified and changed the contract contemplated by the printed form used, so that the printed portions of the contract became inconsistent in several material respects with the provisions which were typewritten into the contract.
Instead of removal of the fruit by the purchaser, the fruit was to be delivered by the sellers to the M & O Corporation plant. The space contemplated for "removal date" was changed to provide that delivery should not start before a certain date. Where the printed form contemplated a description of the grove in which the crop was existing, there was inserted the phrase: "various groves", the parties agreeing that a list thereof would be furnished subsequently. Then the contract concludes with the typewritten provision that the "vendor [the defendant fruit buyers] warrants that the fruit contracted for herein may be the fruit of more than one grove which has been purchased from various growers and it warrants that it will deliver the said merchandise on the date specified, free and clear of all encumbrances." The typewritten provisions of the contract which are inconsistent with printed portions of the contract must prevail. 77 C.J.S. Sales, § 71b; 12 Am. Jur., Contracts, § 253.
In order to give prevailing effect to these typewritten insertions and changes made on the printed form of contract, we conclude, as did the trial court, that title to the valencia oranges did not pass from the sellers to the purchaser. Particularly pertinent here is the principle stated in Tripp v. Wade, 1921, 82 Fla. 325, 331, 89 So. 870, 872, wherein the court stated:
"If it is a part of the contract of sale that the vendor shall deliver the property sold at some fixed time and place and receive payment on delivery, title will not pass until such delivery."
The contract was an executory one; and when considered in light of the plaintiff's allegations to the effect that the subsequent listing of the various groves was required "in order to acquire and provide adequate quantities of citrus fruit for concentrate and citrus fruit juices" and to "insure both quantity and quality thereof", and that the plaintiff "fully accepted the estimate of the defendants of the existence of 25,000 boxes of valencia oranges on the citrus groves", the contract was one for the sale and delivery of 25,000 boxes of valencia oranges of the specified quality, to be paid for at delivery in the specified manner.
The amended complaint does not allege facts to establish any particular or peculiar value of the valencia oranges growing in the listed groves, and from aught it appears that any valencia oranges of the quality specified in the contract would meet plaintiff's alleged purposes. The allegations of the amended complaint to the effect that the defendants fraudulently made it impossible to carry out the terms of the contract are conclusions not supported by statements of fact. Moreover, there is no allegation of resulting injuries which cannot be compensated in damages. Ball v. Ball, 1948, 160 Fla. 601, 36 So.2d 172. The amended complaint did not allege insolvency of the defendants, which was partially the basis for equitable relief in Kellerman v. Chase & Co., 1931, 101 Fla. 785, 135 So. 127. The decisions in cases involving equitable rescission of contracts *785 for the purchase and sale of realty (E.g., Savage v. Horne, 1947, 159 Fla. 301, 31 So.2d 477) are not applicable here. Generally speaking, jurisdiction in equity is rarely entertained in cases involving contracts for the sale of personal property, because in the ordinary case there is an adequate remedy at law for damages.
The allegations of the amended complaint are nothing more than allegations of breach of contract. Bowers v. Dr. P. Phillips Co., 1930, 100 Fla. 695, 129 So. 850. It is a fundamental guiding principle that the jurisdiction of a court of equity to cancel or rescind a contract will not be exercised when the plaintiff's remedy at law, either by way of action or defense, is plain, adequate and complete. 12 C.J.S. Cancellation of Instruments, § 8. The amended complaint does not allege any unusual circumstances operating to the disadvantage of the plaintiff or to the unconscionable advantage of the defendants, and equitable relief was, therefore, properly denied.
The decree is affirmed.
KANNER and SHANNON, JJ., concur.
NOTES
[1] The contract, a copy of which was attached to the amended complaint, was a printed form with appropriate blanks. The underlined passages are those which were typed into the blank spaces on the form. Immaterial portions are omitted.