WILLIAM G. ROE, *Plaintiff in Error,* v. THE WINTER HAVEN COMPANY, a corporation, and BURCO, INCORPORATED, a corporation, *Defendants in Error.*

140 So. 463.

Division B.

Opinion filed February 23, 1932.

Petition for rehearing denied April 12, 1932.

*Huffaker & Edwards,* of Bartow, for Plaintiff in Error;
*Allen E. Walker* and *Harry E. King,* of Winter Haven,
for Defendants in Error.

DAVIS, J.—A contract for the sale of citrus fruit provided that "it is agreed and understood that first party by these presents becomes the owner and second party sells to first party all the fruit at this date upon" described land, for which "first party agrees to pay second party the sum of $2.25 per field box for said fruit, of which sum, $2.00 is to be paid by first party to second

party for each box of fruit as taken from the grove; the balance of twenty-five cents due second party as each field box of fruit is taken from the grove shall be credited first party out of the $1,000.00 this day paid, provided, that when the last fruit is taken from the grove, the parties shall take an accounting of their mutual accounts and a final adjustment shall be made at that time, which shall make the aggregate amount paid by first party to second party, including the $1,000.00 this day paid, equivalent to the sum of $2.25 on each and every field box of fruit taken from said grove during the first season of 1926-27'' and further that the purchaser was to remove all grapefruit from the grove by March 10, 1927, and all oranges before April 15, 1927, and that ''second party covenants that there are no liens * * * upon the fruit * * *'' etc.

The contract was dated November 5, 1926, and was entered into between William G. Roe, plaintiff in error, as party of the first part and purchaser, and by Burco, Incorporated, one of the defendants in error, as party of the second part and seller. The Winter Haven Fruit Company, the other defendant in error, was holder of a mortgage on the property, and by the terms of the contract, was entitled to be paid the sum of $3520.81, out of the first proceeds realized from the sale price of fruit just referred to.

The contract was not performed by the purchaser, so it was alleged. Thereupon the Winter Haven Company and Burco, Incorporated, jointly sued Roe in the Circuit Court of Polk County, to recover damages for the breach. The Circuit Judge construed the contract as a present sale of the fruit, and directed verdict for the plaintiff. At that time proof had been offered that defendant had failed to pay according to the contract, for all of the fruit which it was alleged was on the trees on

November 5, 1925, the date the contract was signed although a part of it had been accepted and paid for.

It is first contended upon behalf of defendant in error, that by the terms of the contract defendant (plaintiff in error here) had purchased the fruit and became the owner of it on the date of the contract; that he had agreed to pay the seller for it by first paying to the Winter Haven Company, the seller's mortgagee, a specific part of the price after which the balance should go to the owner and producer, Burco, Incorporated; that the Winter Haven Company, having an interest in the payment stipulated to be made under the contract, was properly joined as a party plaintiff to the suit with Burco, Incorporated, even though the Winter Haven Company was not technically a party nor named in the contract, and had not signed the writing by which it was evidenced.

At the trial, the jury returned a verdict for $1500.00 in favor of Winter Haven Company. It likewise found that there was no balance overdue Burco, Incorporated, under the terms of the contract after paying the Winter Haven Company the sum of $1500.00 which it was awarded.

The declaration was demurred to by defendant. By him it was insisted that it was not permissible for the plaintiffs to sue jointly on the contract, since their interests under it were several and not joint in character; that The Winter Haven Company being interested under the contract, as to payments up to $3520.81, could have brought a separate suit in its own name for damages for the breach as to it, and that therefore there was not, and could not have been, any joint interest under the contract in favor of both The Winter Haven Company and Burco, Incorporated, in the present case.

But the price sued for was the contemplated total purchase price stipulated with regard to the sale made

in the agreement. And the total amount of that purchase price sued for was the whole consideration moving to the grove owner for making the sale. While payment of a portion of this amount up to the sum of $3520.81 was to be made directly and immediately to The Winter Haven Company, as mortgagee, because it held a mortgage on the producing grove, such payment was nevertheless to be made a *credit* on the seller's mortgage for the seller's benefit.

The mortgagee, by reason of his lien, had an interest in the crop sold, and this interest the provision in question was designed to protect. The mortgagor being the owner of the crop sold, was entitled to the benefit of the whole sale price contracted for, but subject to the stipulated rights of the mortgagee. Both seller and mortgagee together were therefore jointly interested in performance of the agreement, and both plaintiffs consequently had a joint interest in suing on the contract to recover damages for its breach.

There was but one promise, and that was the promise to pay for the crop purchased. This single promise could only be completely discharged by performance for the benefit of both plaintiffs, or by a satisfaction executed by both. Hence there was no error in overruling the defendant's demurrer asserting objections to the joint suit in the name of The Winter Haven Company and Burco, Incorporated.

The next assignment of error is that the court erred in construing the contract to mean that the title to the fruit grown in the grove named therein passed to plaintiff in error as of the date of the contract, by reason of its execution in the form in which it was drafted.

The contract in terms provided for the sale of all the fruit on the trees in the particular grove specified. The sale was in bulk, but with the sales price fixed to be computed later in a particular way, that is, at the rate of

$2.25 per field box. Following the date of the contract, the purchaser exercised his ownership over the fruit by picking and marketing part of it. The language of the agreement itself on this point is that "it is agreed and understood that first party by these presents *becomes the owner* and second party *sells to the first party* all the fruit at this date upon the following described property." In addition to this the instrument, as executed, contains covenants with reference to the seller's right to sell the fruit in question, which provision is one particularly appropriate to a contract for the sale of fruit *in praesenti.*

Nothing on the vendor's part remained to be done to pass title after the paper was executed. The undertaking to pay $2.25 per field box was only the agreed method of paying for the crop after the title had passed at the time of execution of the contract. Such obligation was to pay $2.25 per field box for the fruit as it was picked from the grove. This obligation the trial judge properly instructed the jury should be taken to mean that the amount to be paid should be computed on the basis of the estimated number of field boxes that were on the trees at the time the contract was executed and which would be picked from the trees on or before March 10, 1927, and April 15, 1927. This meant that the amount of fruit on the trees at the time of execution of the contract, less the usual and normal wasteage ordinarily occurring thereafter would constitute the number of field boxes contemplated by the parties as the basis of payment.

If it is a part of a contract of sale of personal property, that the *vendor* shall deliver the property at some fixed time and place and receive payment on delivery, or the agreement is one where anything remains to be done by the vendor to the goods, as by weighing, measuring or testing the goods, or where the price is to depend on the quantity or quality of the goods later to be

delivered, the performance of these things is ordinarily a condition precedent to the transfer of the title to them, although the individual goods are ascertained and they are in a state in which they ought to be accepted. Tripp v. Wade, 82 Fla. 325, 89 Sou. Rep. 870; Branch v. Wilson, 12 Fla. 543; Blackwood v. Cutting Packing Co., 76 Cal. 212, 18 Pac. 248; 9 A. S. R. 199; Barber v. Andrews, 29 R. I. 51, 69 Atl. 1, 26 L. R. A. (N. S.) 1.

But there is abundant authority to the effect that, although personal property of large and unknown quantity may be sold by the pound, foot, yard or other measure, yet if the *seller* is not bound to measure, weigh or identify it before delivery, but delivers the whole to the buyer *in praesenti*, with the intention of making a present sale to him in bulk, the mere fact that the precise quantity is not known, nor the whole price ascertained, does not prevent the title from passing at the time of the making of the agreement to sell. Benjamin on Sales, 296, and cases cited.

From the precise language of the contract in the instant case, as well as from its obvious meaning as gathered from its four corners, we have reached the same conclusion, as did the Circuit Judge, that the agreement herein sued on, passed title to the fruit on the trees at the time it was executed. The purchase price was fixed at a specified price per field box; but this provision contemplated the usual and ordinary number of field boxes that would in ordinary course of performance be removed by the vendee on or before the two dates specified in the contract. Since the title passed at the time the agreement for sale was made, unusual losses thereafter by frost, pests and other causes became the losses of the buyer and not the seller. The question of wastage and drops in any event was only material at the trial, as an element to be taken into consideration by the jury, in computing what the number of field boxes to be paid

for would have been, had the vendee performed the contract instead of breaching it.

There is substantial evidence from which the jury could have rendered a verdict for the amount found by them. The introduction in evidence of the written contract sued on, together with the suppletory evidence offered by plaintiffs tending to show the damages from its breach, constituted a complete refutation of the particular denials embraced in the defendant's several pleas, some of which were equivalent to the general issue. So there was no error on the part of the trial judge in his taking the case away from the jury and directing a verdict for plaintiffs in all points, except as to the question of damages. Nor has any error been found in the court's charges on the latter subject.

No reversible error having been made to appear by the record, it follows that the judgment rendered must be and is hereby

Affirmed.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.