WINTER HAVEN FRUIT SALES CORPORATION v. C. L. BUNDY
& SONS, INC.

174 So. 726.
Division B.
Opinion Filed May 25, 1937.

*Huffaker & Edwards and Waller & Pepper,* for Plaintiff
in Error;

*Harry E. King,* for Defendant in Error.

DAVIS, J.—This was a suit by C. L. Bundy & Sons, Inc.,
against the Winter Haven Fruit Sales Corporation for dam-
ages which the plaintiff sued to recover for breach of a
written contract for the purchase of a certain crop of
citrus fruit. The contract sued on provided for the sale of
a growing citrus crop at a certain unit price per field box;
fixed the time for picking the fruit and provided for meas-
uring and paying in full for the fruit at the time of picking.
It was plaintiff's contention that there was a large amount
of merchantable grapefruit left on the grove by the defend-
ant in violation of the requirements of the contract and that
by reason of the defendant's failure and refusal to take
said fruit and pay for same that plaintiff was entitled to
recover the contract price for such merchantable fruit as
remained on the grove on the first day of April, 1933, the

date upon which all fruit contracted to be sold under the contract was to have been moved.

There was no dispute about the contract or the contract price. The contract itself provided for what should be considered merchantable fruit within its purview. The controversy tried revolved around the proposition whether or not there was any merchantable fruit, within the contract definition, that the defendant had failed to pick and pay for on the date specified in the contract for so doing. It is plaintiff in error's contention upon writ of error taken to a judgment for the plaintiff in the court below that the greater preponderance of the evidence established the fact that the purchaser did not leave any merchantable grapefruit on the grove and that therefore the verdict for the plaintiff should have been set aside.

Contained in the contract sued on was a provision reading in part as follows:

It is further agreed by and between the parties hereto that the above described fruit from the date hereof (October 27, 1932) shall be the property of the party of the second part (Winter Haven Fruit Sales Corporation), subject to its order, but to be clipped from the trees on or before the _____. One-half of crop by Feb. 15/33. Balance of crop by April 1st/33, provided the fruit is fully colored, etc.

In ruling on the defendant's motion for a new trial, the trial judge delivered an opinion, part of which is as follows:

"It appears that the only contention of the defendant which merits serious consideration is the contention that the Court errod in not instructing the jury that the measure of damages was the difference between the contract price and the market value of the alleged marketable fruit in question on the first day of April, 1933, which was the latest date by which the defendant was required under his

contract to remove such fruit. Defendant contends that the contract was an executory contract and therefore that the correct measure of damages is as above stated.

"The Court instructed the jury in substance as follows: That the damages was the difference between the contract price and the resale price, providing, the plaintiff in all good faith used all reasonable effort to resell to the best possible advantage.

"In the case of an executory contract, there is a variety of opinions on the question of the measure of damages, and there seems to be quite a distinction made in a lot of the cases between the measure of damages in the case of executory contracts where the plaintiff is claiming without a resale instead of after a resale. Practically all of the cases, however, agree that the price obtained at a resale fairly made is some evidence at least of the market value. And it will be recalled that there was no other evidence in the case before the jury as to the market value except that established by the resale and the testimony of the plaintiff that he tried to sell it to the best advantage but could not do so. I am inclined to the opinion therefore that under the particular facts and circumstances of this particular case the instruction of the Court as to the measure of damages was correct, even if the contract should be construed as an executory contract. If the evidence of the resale value is the only evidence of the market value then it seems to me that it is a quibble of verbiage to say that the Court should have instructed them technically that the measure of damages was the difference between the market value and the resale value, but that they must be bound by the evidence as to what the market value was, and that the only evidence on the subject was the resale value. There could be no difference whatever in the result.

There are a great many cases cited in Note in 44 A. L.

R., page 304, etc. However, in this particular case it does not seem to me to make any material difference as to which of the rules would be better if the contract had been an executory contract, because in the opinion of the Court, the contract in this particular case was a contract which vested the title to the fruit in question in the defendant at the time of the execution and delivery of the contract itself. And it is not contended but that the Court's charge was correct, if this construction of the contract is correct.

"Defendant contends that the contract is an executory contract because although it uses the words 'that the said party of the first part has this day bargained and sold to the party of the second part all of the crop of the good merchantable fruit consisting of approximately 10,000 boxes of E. and M. S. grapefruit,' and that the text of the contract is the intention of the parties and that the contract left for further determination the quality of the fruit; and hence that the contract must be construed as a whole to have been intended to have been an executory contract to sell the fruit, and not an actual sale of the fruit, vesting title in the purchaser. Defendant cites the case of Bowers v. Dr. P. Phillips Company, 129 Southern 850, in support of this contention.

"There is another case involving a similar contract to that involved in the said cited decision, which was appealed from the Circuit Court of Polk County and affirmed. I agree with the decision of the Supreme Court in the said cited decision and in the said preceding decision, but I am of the opinion that the contract in this particular case is so sufficiently different and so expressly provides that the title should vest in the purchaser that it would not be a reasonable construction to attempt to say that such was not the intention of the parties. It seems to me from my study of the authorities which hold that the question of the intention

governs and that generally the contract will be construed as intending only to be a contract for sale and delivery, when the matter of quality and quantity are left undetermined, apply only in cases where the express intention of the parties is not shown in the contract; and it seems to me that the authorities agree that where the parties make express provision that the title vest in the purchaser they can make it vest regardless of the fact that there may be later details to be settled as to the quality and quantity, because the courts do not attempt to make their contracts for them, but only to use them to get the intention of the parties. In the case of Bowers v. Dr. P. Philips Company, the contract does not expressly provide that purchaser shall be the owner from the date of the contract, or that the title shall vest in the purchaser from the date of the contract, but it is silent on the subject. The contract in that case merely used the ordinary formal language of bargain and sale to the buyer, leaving quality and quantity to be later determined. And the Court therefore properly determined that such a contract was an executory contract and did not vest the title at the time of the execution and delivery thereof. But the contract in this particular case not only uses the ordinary language of bargain and sale by the seller to the buyer, but has a later clause with the expressed stipulation that *'It is further agreed by and between the parties hereto that the above described fruit from the date hereof shall be the property of the party of the second part subject to its order'*; and it seems to me that with that clause specially placed in the contract in addition to the ordinary bargain and sale clause that it must be clearly understood that the parties intended to make the title to the property vest in the purchaser upon the execution and delivery of the contract. This is borne out by the further language of the contract which makes no provision whatever for the seller to have anything else to do with refer-

ence to the delivery of the fruit. It provides that the defendant can enter the grove and remove the fruit. It is quite true that the contract provides that the defendant does not have to take from the trees and pay for any of the said fruit crop except that which was merchantable at the time during which the defendant was to remove same. But it seems to me that such clause was only for the purpose of protecting the buyer against having to pick and pay for any of the fruit except that which measured up to a certain standard laid down in the contract, and the standard of what should be considered merchantable is specifically and expressly set out in the contract. The fruit was sold by the contract to the buyer and he had the privilege of entering the grove and picking at any time, one-half of the crop to be picked by February 15th, 1933, and the remainder by April 1st, 1933. It seems to me reasonable to say that this clause was placed in the contract specifically to protect the buyer against such fruit as might be or become unmerchantable when he went to pick it, in view of the express provision in the contract that the title to the fruit vested in the buyer at the time of the execution and delivery thereof. In view of the fact that the contract contains the ordinary clause of bargain and sale to the buyer and contains an expressed warranty by the seller of his right to sell the fruit, and then in addition contains a specially expressed provision that the fruit shall be the property of the buyer from the date of the execution and delivery of the contract, we must conclude that it was the intention of the parties to vest the title to the said fruit in the defendant at the time of the execution and delivery of the contract; and therefore that the contract was an executed contract vesting title instead of an executory contract.

"It seems to me that the case of Roe v. Winter Haven Company, 140 Southern, page 463, substantiates this view.

In that case the Supreme Court of Florida held the contract to be a contract vesting the title in the buyer, and it is substantially the same as the present contract except that it does not specifically protect the buyer against having to pick and pay for that portion of fruit which should be unmerchantable. It did, however, provide that the buyer should be the owner of the fruit from the date of the contract, and the contract in this case provides that the fruit shall be the property of the buyer from the date of the contract. I cannot see any distinction, and it does not seem to me the fact that in the contract in this particular case the defendant protects itself against having to pick and pay for that portion of the crop that should be unmerchantable would not change the legal effect of the contract and the expressed intention of the parties that the title should vest in the buyer.

"WHEREFORE, I am again of the opinion that the contract in this case was an executed contract and hence that the charge to the jury was correct. It is contended that the jury did not follow instructions of the Court in determining whether or not the plaintiff used all reasonable diligence in getting the most that could reasonably have been secured for the fruit in question, and therefore that the damages are excessive and the verdict should be set aside. I am, however, of the opinion that if the damages were excessive it could be better cured by eliminating such portion as might be clearly excessive and letting the verdict stand. I believe that is usually the preference and custom of the courts where the question is purely one of excessive damages.

"I have carefully considered the evidence and it appears that the plaintiff delayed in making his sale from April 1st to about June 7th, during which time his testimony shows that a great deal of the fruit fell to the ground. In fact, this is his explanation of why there was only approximately

3,000 boxes of fruit on the grove at the time he sold the fruit to the canning company; whereas, he claims there was at least 4,000 boxes of merchantable fruit on the grove on April 1st, 1933. It appears therefore that as a reasonable man he must have known that a large amount of this fruit would fall and be lost by the delay, and it also appears that he could have sold it to the canning company previously but did not do so hoping to get better than canning plant prices.

"I have arrived at the conclusion after a careful consideration of the case that the damages as fixed by the jury are excessive, and that a verdict in excess of $2,000.00 under the particular evidence in this particular case would be excessive under the evidence of the plaintiff. I am therefore of the opinion that the plaintiff should enter a remittitur of all the verdict in excess of $2,000.00.

"There has been considerable argument about the weight of the testimony, etc., but the jury has elected evidently to believe the evidence introduced in behalf of the plaintiff, and I do not deem it proper under the circumstances for the Court to interfere in the findings as to the facts on which liability is claimed.

"WHEREFORE, IT IS HEREBY ORDERED AND ADJUDGED that the plaintiff shall enter a remittitur of all of the verdict in excess of the sum of $2,000.00 within five days from this date, and that upon the entry of such remittitur the motion of the defendant for a new trial be and the same is hereby denied, and that in the event the plaintiff does not do so enter a remittitur within the time specified, that the said motion of the defendant for a new trial be and the same is hereby granted, to which ruling the respective parties except."

To undertake to elaborate upon what has been so well stated in the opinion of the trial judge, would subserve no useful purpose. It is sufficient to say we think that the Cir-

cuit Judge correctly appraised the controversy between the parties and followed the proper rule of law applicable to the rulings he was required to make in the course of the trial concerning it. The case as made is controlled by what was said by us in the case of Roe v. Winter Haven Co., 104 Fla. 317, 140 Sou. Rep. 463, and upon the basis of that decision we are impelled, to affirm the judgment as entered. In so deciding we have not overlooked the case of Metcalf v. R. D. Keen & Co., 122 Fla. 27, 164 Sou. Rep. 704, which we consider to be clearly distinguishable on the basis of the particular contract that we have involved in the present case.

Affirmed.

WHITFIELD, P. J., and BROWN, J., concur.

ELLIS, C. J., and BUFORD, J., concur in the opinion and judgment.

TERRELL, J., not participating.