M. H. GIVENS, Plaintiff in Error, v. VAUGHN-GRIFFIN PACKING COMPANY, a Florida Corporation, Defendant-in Error.

1 So. (2nd) 714

Special Division B

Opinion Filed April 11, 1941

Rehearing Denied May 7, 1941

576

578

*Wilkerson & Gaylord, Keen* and *Allen* and *A. Frank O'Kelley, Jr.,* for Plaintiff in Error.

*Duncan, Hamlin & Duncan,* and *John S. Lavin,* for Defendant in Error.

BROWN, C. J.—This writ of error brings for review final judgment finding in plaintiff's favor and awarding it $2,000.00 damages.

On November 25, 1937, the Vaughn-Griffin Packing Co. contracted to purchase the 1937-1938 citrus crop of M. H. Givens. The packing company paid the seller $2,000.00 at the time of making the agreement, and paid for each box of fruit that was picked according to the contract rate. Approximately 6680 boxes of fruit had been picked when a freeze occurred, damaging part of the remaining fruit. A controversy arose between the seller and the packing company as to interpretation of certain provisions of the contract with reference to the damaged fruit. Thereafter, between the date of the freeze and the expiration date of the contract none of the fruit was picked by the packing company. The seller refused to extend the expiration date of the contract. The packing company, upon the theory that the seller's conduct amounted to rescission or an offer to rescind the contract, sued at law on the common counts, to recover the $2,000.00 paid in advance on the contract.

The declaration contained counts for: (1) Money payable by the defendant to the plaintiff for money received by the defendant for the use of the plaintiff. (2) Money paid by the plaintiff for the defendant at his request. (3) Money lent by the plaintiff to the defendant. (4) Money found to be due from the defendant to plaintiff on accounts stated between them.

To the declaration defendant filed pleas of (1) never was indebted as alleged; (2) did not promise as alleged; (3) that defendant has not rescinded any citrus fruit contract with plaintiff and (4) that defendant is not indebted for any interest whatever. There were no pleas of set-off or recoupment.

Upon plaintiff's motion to strike, the court ordered the second, third and fourth pleas of defendant stricken.

The cause went to trial upon the four common counts and the first plea of the defendant. The jury returned a verdict in favor of plaintiff, fixing its damages at $2,000.00, upon which verdict judgment was entered.

Motion for new trial was denied, and writ of error was taken to the final judgment.

The only plea of "never was indebted as alleged" on which the parties went to trial presents the general issue on the common counts. Sec. 4332, 4333 (1) C. G. L., 1927; Poppell v. Culpepper, 53 Fla. 515, 47 So. 351. This plea operates as a denial of those matters of fact from which the liability of the defendant arises. Rule 25 of the Common Law Rules. Under this plea any negative but no affirmative defense may be made. Crandall's Florida Common Law Practice, p. 225. Set-off, being an affirmative matter of defense, must be specially pleaded. See Sec. 4332, 4333 (6) C. G. L., 1927. In the absence of such a plea of set-off or recoupment the defendant could not introduce evidence of any matter of set-off, because not in issue, and the

court could not allow any set-off to be calculated in arriving at the amount set in the final judgment for plaintiff's recovery.

The whole case, in so far as this writ of error is concerned, turns on whether there was any ground for recovery on the common counts. The common counts could be used only where there was an implied contract, or where there was no contract, as where it had been rescinded; or where an express contract had been fully performed by plaintiff, so that the only thing remaining to be done is the payment of money. Hazen v. Cobb-Vaughn Motor Co., 96 Fla. 151, 117 So. 853.

The contract between the Vaughn-Griffin Packing Company and M. H. Givens, the subject of this litigation, contained the following provisions:

"The seller hereby acknowledges receipt of the sum of $2,000.00 above specified, as a first payment on said fruit, which amount shall be supplied on the total purchase price and to be deducted in making final settlement for said fruit.

"The purchaser shall have up to and including the 15th day of December, 1937, to remove fruit from trees, fruit to be paid for each morning after following picking day, in which to remove said fruit from said grove or groves and same may be removed by the purchaser at any time prior to said date and the purchaser shall have free ingress and egress over, upon and across the said grove or groves, with such teams and trucks as are necessary to remove the fruit from same, and the right to use all such ladders and boxes and paraphernalia as may be required in picking said fruit.

"In case the buyer is prevented from shipping said fruit any time prrior to the date of removal by strikes, embargoes, quarantines, the act of God, or any other matter or

thing, beyond his control, the time for removing and ship-ping said fruit shall be extended a length of time equal to such length of time as he was prevented from moving same by the happening of any, either or all of such events.

"It is agreed that this contract covers all fruit, which shall is ready to remove same within the time specified herein. Bad ammoniated, lemon scab, silver skin, frost damage or badly wind damaged fruit not included in this contract.

"The seller agrees that this contract containes the entire agreement relating to the purchase mentioned herein, and that he has received a true copy thereof."

The whole theory of plaintiff's case is that by reason of defendant's conduct the contract has been rescinded, or such conduct amounted to an offer to rescind, which plaintiff accepted and acted accordingly, and that plaintiff was there-fore entitled to recover on the common counts the $2,000.00 paid defendant when the contract was executed.

The record shows that the contract was executed on November 25, 1937. Thereafter 6,680 boxes of the esti-mated 8,000 to 10,000 boxes of fruit were picked and paid for at the contract price. Then a freeze occurred on the nights of December 6 and 7, 1937. Four different fruit groves were covered by the contract, three small groves known as the Columbia, Woodward, Ypsilante, one large grove, known as the Parson Brown. In the Parson Brown Grove considerable fruit was frost damaged, various esti-mates placing the damage at 50 per cent to 80 per cent. In the other three groves the damage was estimated at about 10 per cent. The contract, unless extended, expired by its own terms on December 15, 1937. After the freeze, the packing company inspected the groves several times and estimated the frost damage at 75 per cent to 80 per cent in the Parson Brown Grove and about 10 per cent in the three

smaller groves, and asked for an extension of time in which to remove the fruit from the Parson Brown Grove, which request was refused by defendant. Defendant insisted that all fruit be picked and removed by the expiration date of the contract; that all the fruit, both frost damaged and good, be picked, and that the Parson Brown grove be picked first.

There was a difference of opinion between the parties as to the interpretation of the contract, whether or not it excluded fruit damaged by frost after execution of the contract on November 25, 1937, or only that so damaged prior to that date. We think that provision of the contract may reasonably be taken to have excluded any fruit that was damaged by frost during the period November 25, 1937, to December 15, 1937, as the court and jury evidently found.

Plaintiff in error contends that the insistence of defendant that plaintiff pick first the fruit from the Parson Brown Grove, after the freeze, did not interfere with the performance of plaintiff's duty under the contract to pick the merchantable fruit from all four groves covered by the contract, excluding of course the frost-damaged fruit, by December 15, 1937, and that it could not make any material difference in the ultimate performance of the contract which was picked first.

This contention leaves out any consideration of defendant in error's rights under that clause of the contract with reference to an extension of time for picking, and also of the evidence tending to show that the packing company could not, for the first week or ten days after the freeze, distinguish the frost-damaged and frozen fruit from that which was not so affected by the freeze.

Plaintiff below was bound by the contract to pick and pay for at a stated contract rate all merchantable fruit by De-

cember 15, unless he was entitled to an extension beyond that date under the contract. Plaintiff in error contends that the method of determining what was and what was not frost-damaged fruit was plaintiff's responsibility, and that if the only way plaintiff could make such determination was to pick all the fruit and float it out in a machine in the packing house for that purpose, then that must have been done. That if any merchantable fruit was left on the trees prior to December 15, 1937, plaintiff was liable therefor at the contract rate, less whatever defendant could realize from the sale of such fruit to another party after the expiration of the contract, if after effort any sale could be effected. Citing Winter Haven Fruit Sales Corporation v. C. L. Bundy Sons, 128 Fla. 324, 174 So. 726, and Vaughn-Griffin Packing Co. v. Fisher, 141 Fla. 428, 193 So. 533. But this contention again leaves out of consideration the question of the packing company's right, under the circumstances proven, to a reasonable extension of time for picking as provided for in the contract.

In reply to plaintiff's request for an extension of the expiration date of the contract, defendant Givens replied, refusing to extend the expiration date and insisting that the fruit be picked by the expiration date set in the contract and that the Parson Brown Grove, which was the worst damaged, be picked first. Plaintiff, by letter of December 13, 1937, wrote defendant Givens that since defendant had "arbitrarily refused" an extension of time for removal of the fruit, he had by his own act made it impossible for the packing company to perform its obligation as required by the contract. The contract provided that "in case the buyer is prevented from shipping said fruit any time prior to the date of removal by . . . Act of God . . . the time for removing and shipping the said fruit shall be extended a length of

time equal to such length of time as he was prevented from removing same by the happening of any . . . of such events."

Under the contract, the packing company was entitled to an extension of time of such duration as contemplated by the terms of the contract, if an "Act of God" prevented the removing and shipping of the fruit within the time provided in the contract. The freeze and consequent frost damage was an "Act of God." Whether the effect of the freeze on the fruit was such as to require defendant, under the contract, to grant the requested extension, was, under the testimony, a question for the jury. Plaintiff's request for an extension need not, under the circumstances, have been for any stated length of time. If, as the jury evidently found, the packing company was entitled to an extension, such time as it was actually delayed in picking and shipping the fruit, because of the freeze, should have been allowed as an extension.

The court gave, among others, the following charges to the jury:

"Bad ammoniated, lemon scab, silver skin, frost damage or badly wind damaged fruit is not included in this contract, which means that if any of the fruit was within any of these classifications on or before the date for performance, that is, December 15, 1937, the plaintiff was not required to pick such part of the fruit.

"The principal issue and controversy between the parties is as to whether a substantial part of the remaining oranges were 'frost damage' oranges and thus excepted from the provisions of the contract. While the court will instruct you as to the meaning of the term, it is for the jury to determine whether a substantial part of the remaining fruit consisted of frost-damaged oranges.

"By 'frost damaged' fruit is meant individual oranges

showing any perceptible mount of damage resulting from climatic temperatures of 32 degrees Fahrenheit or less.

"If you find from the evidence that a substantial percentage of the remaining oranges covered by the contract were frost-damaged prior to December 15, 1937, and that the defendant before December 15, 1937, insisted upon the removal of the 'frost damaged' fruit and payment therefor at the contractual rate, then the plaintiff was excused from performing with respect to any of the remaining crop and is entitled to recover its deposit of $2,000.00.

"There is a difference between the rescinding of a contract and the breaching of a contract. A mere breaching of a contract is not necessarily a rescinding of the contract. When a contract is rescinded it is done away with and ceases to be a contract. When a contract is breached the contract continues to live and the parties have their rights to damages for the breach instead of on the theory of the contract being rescinded.

"The court charges you that the sale or disposition by the defendant, M. H. Givens, of any of the fruit involved under the contract after the time for performance of the contract had arrived or after any failure by Vaughn-Griffin Packing Company to perform the contract which disposition M. H. Givens made for the purpose of protecting the interest of the parties to the contract would not rescind the contract.

"Generally speaking a contract of sale may be rescinded only in its entirety; it cannot be affirmed in part and disaffirmed, repudiated or rescinded in part by either the seller or the buyer.

"In contracts of sale time is usually a material and essential element of the contract and if a period is fixed during which the contract is to continue the time will be strictly limited to that fixed by the contract especially where the subject of the contract is of fluctuating value."

In view of the testimony in the record before us, we do not think these charges were erroneous. Nor do we find any reversible error in the action of the court in refusing to give certain instructions requested by the plaintiff in error. As to the requested instruction that there could have been no rescission unless both parties could have been restored to the condition they were in before the contract was made, we do not think that rule could be invoked by plaintiff in error, as he does not deny that he had been paid by the packing company for all fruit picked before the freeze, which payments he never offered to return. Nor does he charge any failure of the packing company to live up to the contract prior to the freeze and prior to his demand for the picking of all the fruit, frost damaged included, before the expiration date of the contract, thus ignoring the packing company's right to an extension.

The contract in this case contemplated that the risk of damage from frost should fall on the seller and not on the buyer. Under this contract, there was no obligation on the part of the buyer to gather the frost-damaged fruit. Where one party arbitrarily assumes an unequivocal and absolute position affecting the substance of a contract, which amounts to a repudiation of its terms, the other party, not himself in default, is justified in accepting such attitude and position as an offer to rescind, upon which he may act, and this, too, without restoring the executed portion of the contract, where, as in this case, the executed portion of the contract consisted of the merchantable fruit which the packing company had already picked and shipped and paid for in accordance with the contract, and which payments the other party did not offer to return. See 17 C. J. S., 911-924; Cox v. Gross, 97 Fla. 848, 122 So. 513. See in this connection Squires v. Citrus Fruit Products, Inc., 140 Fla. 253, 191 So. 455. If one party to a contract renders performance im-

588

possible, the opposite party may at his election rescind it. Realty Securities Corp. v. Johnson, 93 Fla. 46, 111 So. 532, 536. It is also true that this contract was severable—that under it the purchaser's duty was to pick only the good merchantable fruit, discarding the frost-damaged fruit, which under the contract the purchaser was under no obligation to pick or pay for, and the contract being thus severable, there was no obligation on the part of the purchaser to restore the executed portion of the contract, which he had paid for before treating the arbitrary and unjustifiable demand of the seller as an offer to rescind.

Whether or not, under the evidence, the defendant had by his conduct rescinded the contract was a question for the jury, which question was determined adversely to plaintiff in error by the jury's verdict. We find no reversible error in the court's charge to the jury, or in the giving or refusing of requested charges of the parties.

The judgment is accordingly affirmed.

Affirmed.

WHITFIELD, CHAPMAN and THOMAS, J. J., concur.